## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Debra Miller**

       **Plaintiff,**

**v.**                                                                 **Case No. 16-cv-2445-JWL**

**Jefferson County Board of**
**County Commissioners,**

       **Defendant.**

## <u>MEMORANDUM & ORDER</u>

Plaintiff Debra Miller filed this lawsuit against the Board of County Commissioners of Jefferson County, Kansas alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Kansas Age Discrimination in Employment Act, K.S.A. § 44-1111 et seq. Specifically, plaintiff alleges that the County terminated her employment on the basis of her age. This matter is presently before the court on defendant's motion for summary judgment (doc. 13). As will be explained, the motion is granted.

### I.    Facts

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party. Plaintiff Debra Miller began her employment with Jefferson County in 1986 when she was hired as a part-time bookkeeper in the Road and Bridge department. Ten years later, in December 1996, plaintiff was promoted to the position of Office Manager in that department. Plaintiff remained in that position without incident

for more than 17 years.  In January 2014, the County hired Bill Noll as Public Works Director after he served two years as the County's zoning administrator.  Mr. Noll's promotion to Public Works Director was effective on January 26, 2014 and he became plaintiff's supervisor at that time.  The Public Works Director position was a new position that the County created to provide oversight of the County's Road and Bridge department and the County's Auxiliary Services department.  Before Mr. Noll's promotion to that new position, plaintiff reported to Francis Hubbard, who supervised the Road and Bridge department 2008 until January 2014, when he asked the County Commissioners if he could step down from his position and accepted a voluntary demotion to road foreman.[1]

On his first day as Public Works Director, Mr. Noll advised plaintiff that he intended to convert the employee break room into his office.  Plaintiff "tried to talk Mr. Noll out of it" because she believed that there were other available spaces that would have been equally suitable.  She suggested to Mr. Noll that he use available office space in another building.  It is undisputed that she was disappointed in Mr. Noll's decision because she was losing a room that she and other employees regularly used for breaks and for lunch.  She told Mr. Noll that she was going to call the County clerk and the County Commissioners to find out whether there was a policy requiring the County to provide its employees with a lunch room.  The County asserts that plaintiff was so upset by Mr. Noll's office location that plaintiff tried to sabotage Mr. Noll's employment with the County.

---

[1] Mr. Hubbard's employment was later terminated by Mr. Noll with the approval of the County Commissioners.  Mr. Hubbard filed a lawsuit alleging age discrimination and his claim recently survived summary judgment.

During this same time, Mr. Noll began asking a number of employees in the department whether they had set retirement dates. According to the County, Mr. Noll had been advised that he would likely experience significant employee turnover in the next two years and that he should "check" with certain employees for purposes of succession planning within the department. It is undisputed that Mr. Noll did not ask plaintiff whether or when she intended to retire. He did ask plaintiff if she was "tired" of her job and whether she would prefer a "different job." In response, plaintiff advised Mr. Noll that she intended to keep working for another 10 years.

During an execution session with the County Commissioners on February 3, 2014, Mr. Noll began discussing with the County Commissioners concerns he had about plaintiff—including what he perceived as plaintiff's unreasonable reaction to Mr. Noll's decision to locate his office in what had been the break room. Plaintiff does not dispute that Mr. Noll continued to discuss plaintiff's performance with the County Commissioners during multiple executive sessions over the next several weeks. Ultimately, Mr. Noll documented his concerns in a detailed memorandum that he presented to the County Commissioners during an executive session on March 24, 2014 for the purpose of obtaining the Commissioners' approval of Mr. Noll's decision to terminate plaintiff's employment. Three days prior to that executive session, Mr. Noll was advised by a crew leader that he had heard plaintiff say that she hoped that Mr. Noll failed at his job and that he would be fired by the County Commissioners. At that point, Mr. Noll determined that he could not have plaintiff continue in the Office Manager role. Plaintiff does not specifically dispute telling another employee that she hoped Mr. Noll lost his job. She avers that she remembers that Mr. Noll's name came up in a conversation with another employee about employment longevity,

that she "cannot remember exactly what was said," but that she "made it clear at the end of the conversation that she was only joking."[2]

Mr. Noll authored the termination memorandum on March 24, 2014, the same day that he presented the document to the County Commissioners. It is undisputed that Mr. Noll had not issued any written warnings to plaintiff prior to March 24, 2014 and there is nothing in plaintiff's personnel file indicating any performance-related issues at any time during her employment with the County. In the termination memorandum, Mr. Noll set forth eight separate reasons for his decision to terminate plaintiff's employment.[3] Those reasons, as described in the memorandum, are as follows:

- Plaintiff's reaction to Mr. Noll's decision to use the break room as his office and Mr. Noll's perception that plaintiff decided to "sabotage" his employment with the County at that point.

- Plaintiff failed to provide Mr. Noll with an accurate password for the department's online account with the FCC so that Mr. Noll, by the deadline established by the FCC, could communicate with the FCC about the status of the "narrow banding" of the department's radios.

- Plaintiff failed to convey phone messages to Mr. Noll.

- Plaintiff was "rude" to members of the public and other employees.

- Plaintiff failed to send out timely requests for fuel and road oil bid for the summer construction season, which caused the County to pay a higher price for oil.

---

[2] Plaintiff contends that the County's evidence on this point constitutes inadmissible hearsay. It is clear, however, that the County is offering that evidence not for the truth of any statements, but to show the basis for Mr. Noll's conclusion that plaintiff's employment should be terminated. The objection, then, is overruled.

[3] Plaintiff contends that the court cannot consider the contends of Mr. Noll's memorandum because it constitutes hearsay. That objection is overruled. *Denison v. Swaco Geolograph Co*., 941 F.2d 1416, 1423 (10th Cir. 1991) (exhibit not hearsay because it was not offered to prove the truth of its contents, but to show defendant's motivation during a reduction in force).

•     Plaintiff, on almost a daily basis, worked unauthorized overtime hours.

•     Plaintiff refused to verify whether funds were available for the department's use through the Kansas Exchange Fund Program.

•     Plaintiff commented to other employees that she hoped that Mr. Noll failed at his job.

The County Commissioners approved Mr. Noll's decision to terminate plaintiff's employment and Mr. Noll advised her about that decision on March 25, 2014. Plaintiff was 53 years old at that time. The Office Manager position was filled by a woman who had worked for the County for nearly 20 years.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.    Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc*., 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc*., 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

5

### III.    Age Discrimination Claim

In the pretrial order, plaintiff asserts that the County terminated her employment on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Kansas Age Discrimination in Employment Act ("KADEA"), K.S.A. § 44-1111 et seq.[4]  As plaintiff has no direct evidence of discrimination, her claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).  Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination.  *Id.*  To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Id.* (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)).  If she establishes a prima facie case, the burden shifts to the County to assert a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.* If the County meets this burden, summary judgment against plaintiff is warranted unless she introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." *Id.*  (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

In its motion for summary judgment, the County assumes that plaintiff has sufficient evidence to establish a prima facie case.  The court turns, then, to whether the County has met its

---

[4] The court considers plaintiff's claims under the ADEA and the KADEA in tandem because the same standards and burdens govern both claims. *See Nyanjom v. Hawker Beechcraft Corp.*, 641 Fed. Appx. 795, 799 (10th Cir. Jan. 28, 2016).  Moreover, neither party suggests that the applicable provisions differ in any respect.

burden to articulate a legitimate, nondiscriminatory reason for the employment decision. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that the County has carried it here. *See id.* According to defendant, the County terminated plaintiff's employment for the eight reasons set forth in the memorandum drafted by Mr. Noll and presented to the County Commissioners prior to the termination decision: plaintiff's reaction to Mr. Noll's decision to use the break room as his office; plaintiff's failure to provide accurate FCC account passwords to Mr. Noll; plaintiff's failure to relay phone messages to Mr. Noll; plaintiff's rudeness to members of the public and other employees; plaintiff's failure to timely send out requests for bids for oil products that the County needed for summer construction season; plaintiff's almost daily use of unauthorized overtime; plaintiff's failure to verify available funds through the Kansas Exchange Fund Program; and plaintiff's comments in the workplace suggesting that she hoped that Mr. Noll failed at his job. The burden of proof, then, shifts back to plaintiff to show that the County's proffered reasons are pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Carter*, 662 F.3d at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated

similarly situated employees differently. *Crowe v. ADT Servs., Inc*., 649 F.3d 1189, 1197 (10th Cir. 2011). Simply put, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *McDonald-Cuba v. Santa Fe Protective Servs., Inc*., 644 F.3d 1096, 1102 (10th Cir. 2011).

Where, as here, an employer advances several reasons for an adverse employment action, the Tenth Circuit has adopted a "general rule" that "an employee must proffer evidence that shows each of the employer's justifications is pretextual." *Lobato v. New Mexico Environment Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1126 (10th Cir. 2005)). The Circuit, however, recognizes several exceptions to that rule. *See id*. For example, if a plaintiff casts "substantial doubt on many of the employer's multiple reasons," such doubt may be sufficient reason to doubt all of the reasons proffered by the employer. *Id*. Moreover, if one of the stated reasons for termination predominates over the other reasons, a showing that the dominant reason was pretextual may be sufficient. *Id*. Another alternative is showing that "the pretextual character of one explanation is so fishy and suspicious that a jury could find that the employer (or its decisionmaker) lacks all credibility." *Id*. (quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005)). "All of which is to say, our inquiry is not mechanistic; it is designed to tease out factual questions that are legitimately in dispute. And summary judgment is appropriate where the plaintiff cannot demonstrate any genuine dispute of material fact for the jury to resolve." *Id*.

With this framework guiding us, the court examines plaintiff's evidence of pretext. Plaintiff directs the court to four categories of evidence that she suggests demonstrates pretext either individually or in the aggregate. As will be explained, plaintiff has not established a genuine dispute about pretext.[5]

## A.      The Termination Memorandum

To establish pretext, plaintiff first challenges the timing and content of the memorandum authored by Mr. Noll three days prior to plaintiff's termination in which he sets forth eight separate reasons for the termination of plaintiff's employment. She contends that the reasons set forth in the memorandum are largely subjective; that the timing of the memorandum is suspicious because it was created only 3 days prior to her termination and without any prior disciplinary write-ups; that the reasons set forth in the memorandum are implausible; and that the memorandum is suspicious because portions of it mirror a memorandum written by Mr. Noll with respect to Mr. Hubbard. As will be explained, none of these arguments individually or collectively casts any doubt on the County's stated reasons for terminating plaintiff's employment.

---

[5] The County contends that plaintiff, to survive summary judgment, must come forward with evidence of pretext and evidence sufficient to support an inference of age discrimination. The court rejects this argument, as the Circuit repeatedly rejected the "pretext plus" standard in favor of a rule that permits a plaintiff to survive summary judgment with evidence supporting a prima facie case and discrediting the employer's proffered reason. *See Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1280 (10th Cir. 2010) (reversing grant of summary judgment where district court utilized "pretext plus" standard that the Circuit had "definitively rejected") (quoting *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 148 (2000) ("a plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated")).

*Subjective Reasons*

Plaintiff first contends that the reasons given by Mr. Noll in the termination memorandum are subjective and she directs the court to cases in which pretext was shown in part because an employer relied on subjective criteria in making the termination decisions. Plaintiff does not explain to the court how the reasons identified by Mr. Noll are subjective. Subjective criteria include vague concepts such as "potential for success" and "leadership and communication skills." *See Sotunde v. Safeway, Inc.*, ___ Fed. Appx. ___, 2017 WL 5643116, at *4 (10th Cir. Nov. 24, 2017). Other than Mr. Noll's concerns about plaintiff's interpersonal skills, none of the reasons set forth in the memorandum can be reasonably construed as "subjective" given the context provided by Mr. Noll in the document. Moreover, the Circuit has recognized that "nothing bars an employer from utilizing subjective criteria in decision-making," *see Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 657 (10th Cir.2013), and will infer pretext only when the evaluation criteria are *entirely* subjective and the process in question is opaque rather than transparent. *Conroy v. Vilsack*, 707 F.3d 1163, 1178 (10th Cir. 2013). Plaintiff has not shown that those circumstances are present here. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2008) (supervisor's subjectivity or latitude in determining what information would be considered in making a termination decision was not sufficient to establish pretext where there was no evidence that supervisor used that latitude to act on alleged age bias).

*Timing of Memorandum*

Plaintiff also complains that the termination memorandum is suspect because it was authored just three days prior to plaintiff's termination and there is no other documentation supporting plaintiff's termination such as prior disciplinary write-ups. It is undisputed, however, that no County policy exists requiring progressive discipline or a written warning prior to termination. Any written warnings were entirely at the discretion of the supervisor. There is no evidence that Mr. Noll ever utilized the practice of written counselings as to any employee such that plaintiff might be able to show that she was treated differently than other employees. *See Lobato v. New Mexico Environment Dep't*, 733 F.3d 1283, 1290-91 (10th Cir. 2013). Moreover, Mr. Noll had only recently started supervising plaintiff and he was entitled to institute new performance standards for his employees. Thus, the fact that no prior supervisor had ever disciplined plaintiff for the performance issues highlighted by Mr. Noll does not show a genuine dispute about pretext. *See Metzler v. Federal Home Loan Bank*, 464 F.3d 1164, 1175-76 (10th Cir. 2006) (no pretext where plaintiff failed to show that employer's change in treatment of her was based on invocation of FMLA rights rather than higher expectations of new manager). Finally, to the extent that plaintiff suggests that Mr. Noll "suddenly created" the reasons for her termination just three days prior to plaintiff's termination, the uncontroverted evidence demonstrates that Mr. Noll had been discussing his concerns about plaintiff's performance with the County Commissioners since early February 2014.

*Substance of Proffered Reasons*

11

In painstaking detail, plaintiff challenges each of the reasons offered by the County for her termination.[6]  But plaintiff's evidence, even considered in totality and in the light most favorable to her, suggests only that Mr. Noll made a mistake in his assessment of her performance or that his perception of her performance differed from her own.  Nothing in the record demonstrates that Mr. Noll did not honestly believe the reasons he set forth in the termination memorandum or that he failed to act in good faith on those beliefs.  *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) ("The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.").

With respect to Mr. Noll's decision to convert the break room to his office, plaintiff readily admits that she "tried to talk Mr. Noll out of it" because she believed that there were other available spaces that would have been equally suitable.  She suggested to Mr. Noll that he use available office space in another building.  She further admits that she was disappointed in his decision because she was losing a room that she and other employees regularly used for lunch.  While she denies that she threatened to call the County clerk to have Mr. Noll disciplined (as Mr. Noll testified in his deposition), she admits that she told Mr. Noll that she was going to call the

---

[6] Plaintiff also challenges in great detail Mr. Noll's testimony about plaintiff's failure to embrace mapping software.  Because there is no evidence that the County relied on this purported failure when it terminated plaintiff's employment, that evidence is not pertinent to the pretext analysis.  Plaintiff also contends that the some of the reasons identified by Mr. Noll are tied to plaintiff's "past performance" despite the fact that Mr. Noll testified that he did not consider plaintiff's past performance in the decision to terminate her employment.  That argument places undue emphasis on one line from Mr. Noll's deposition in which he simply confirmed that he did not recall looking at plaintiff's personnel file and he did not consider whether she had received prior disciplinary write-ups when he made the decision to terminate her employment.

County clerk and the County Commissioners to find out whether there was a policy requiring the County to provide its employees with a lunch room. Plaintiff's evidence hardly calls into question Mr. Noll's stated reason—in fact, her admissions tend to establish that plaintiff was unduly upset about Mr. Noll's decision to use the break room as his office. Plaintiff has no evidence tending to show that Mr. Noll did not honestly believe that plaintiff "decided to sabotage" Mr. Noll over the dispute about the break room. Plaintiff, then, has not shown that this specific reason is pretextual.[7]

The second paragraph of the termination memorandum describes Mr. Noll's unsuccessful efforts to obtain an accurate FCC account password from plaintiff to communicate with the FCC about the narrow-banding of Road Department radios. Plaintiff attempts to show pretext by arguing that Mr. Noll was "confused" because the radios had already been narrow-banded. According to plaintiff, and as Mr. Noll conceded in his deposition, the issue concerning the radios was that the licenses had not been modified to reflect that the radios complied with the narrow-banding requirement. But even if Mr. Noll was confused on this issue, there is no dispute that the Road Department needed to access the FCC account to update the license or otherwise communicate with the FCC about the status of the department's radios. And plaintiff does not dispute that Mr. Noll was attempting to obtain an accurate password from plaintiff to access the FCC account for the purpose of communicating about the radios. While plaintiff contends that she made a good faith effort to provide an accurate password and suggests that perhaps Mr. Noll

---

[7] Plaintiff contends that this paragraph in the memorandum is inaccurate because Mr. Noll wrote in it that the break room was "being used as Debbie Miller's personal break room" but later testified that the room was not, in fact, her "personal" break room. Mr. Noll's obvious use of hyperbole in the termination memorandum does not cast doubt on "break room" issue.

was failing to properly input the passwords that she provided to him, she has no evidence that Mr. Noll did not honestly believe that plaintiff was unable to provide him with a working password, either because she did not know the correct password or because she was unable to properly reset the password when prompted to do so.[8]

The third paragraph of the termination memorandum describes plaintiff's failure to convey phone messages to Mr. Noll. In the memorandum, Mr. Noll identifies a specific person who told him that she had called his office six times trying to reach him and, according to Mr. Noll, he received only two messages to that effect. Plaintiff, then, highlights that Mr. Noll admits that he was receiving some messages. But because Mr. Noll did not suggest that he never received any phone messages, but only that he was not receiving all of his messages, this point is not pertinent. Moreover, in his deposition, Mr. Noll identified additional numerous other individuals who would ask him why he had not returned their phone calls and Mr. Noll had not received any messages from those individuals. Plaintiff does not challenge this evidence other than by simply denying that she failed to convey messages to Mr. Noll. According to plaintiff, it is possible that Mr. Noll did not receive certain messages because she left messages for him in a folder on top of her desk that he rarely checked. But the evidence does not demonstrate that Mr. Noll understood that plaintiff, on a consistent basis, was leaving phone messages in the folder.

---

[8] Plaintiff also highlights minor discrepancies in Mr. Noll's memory concerning the specific timeline of his efforts to obtain the correct password. But because both plaintiff's and the County's evidence is consistent in terms of the substance of the dispute—whether plaintiff repeatedly provided an inaccurate password to Mr. Noll for the FCC account—these minor discrepancies do not demonstrate pretext. *Conroy v. Vilsack*, 707 F.3d 1163, 1175 (10th Cir. 2013).

According to the County, Mr. Noll also based the termination decision on his assessment that plaintiff was rude to members of the public on the phone and to other employees in the office. Plaintiff denies being rude to the public on the phone. But she offers no evidence suggesting that Mr. Noll did not honestly believe that plaintiff, at least on occasion, was rude to the public. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 971 (10th Cir. 2017) ("In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision," and "do not look to the plaintiff's subjective evaluation of the situation."). She also attempts to explain the conduct that Mr. Noll highlighted in his memorandum with respect to her treatment of other employees. According to Mr. Noll, plaintiff consistently refused to provide employees (who did not have access to a computer printer) with a copy of their timesheets. Rather than simply print a copy for an employee, plaintiff would log off her computer, walk away, and tell the employee to get it for himself or herself. Plaintiff does not dispute Mr. Noll's account of her conduct, but explains that she did not feel comfortable printing that information out for other employees because it contained private payroll information and she walked away to permit those employees to access their information privately. But assuming the truth of that evidence, there is no evidence that Mr. Noll understood why plaintiff was "refusing" to help other employees. At best, plaintiff's evidence shows that Mr. Noll "got it wrong" in his assessment of her behavior. Under established Circuit precedent, such evidence is insufficient to show pretext. *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1211 (10th Cir. 2010) ("That individuals and companies sometimes make employment decisions that prove to be bad ones in hindsight usually suggests no more than that—that they got it wrong. To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce

15

evidence that the employer did more than get it wrong.  He or she must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda.").

Plaintiff's pretext arguments concerning the substance of Mr. Noll's final four reasons can be addressed in short order.  Plaintiff contends that Mr. Noll's criticism about the oil bidding process was based on a "misunderstanding" on plaintiff's part that she corrected as soon as possible.  Plaintiff concedes that she worked at least 30 minutes of daily overtime and that Mr. Noll never authorized it.[9]  She does not dispute the County's evidence that Mr. Noll discussed with her the need to "eliminate all overtime" through more efficient work techniques.  With respect to the Kansas Exchange Fund Program, plaintiff essentially contends that it was "not her job" to verify whether funds were available to the department through the program.  Finally, she does not specifically dispute telling another employee that she hoped Mr. Noll failed at his job.  She avers that she remembers that Mr. Noll's name came up in a conversation with another employee about employment longevity, that she "cannot remember exactly what was said," but that she "made it clear at the end of the conversation that she was only joking."  None of this evidence remotely casts doubt on Mr. Noll's asserted reasons or shows that he did not honestly believe that plaintiff did not timely solicit oil bids; that plaintiff was inappropriately working overtime that was not necessary or authorized; that plaintiff did not verify the funds available through the Kansas Exchange Fund Program despite his direct request that she do so; or that

---

[9] While she contends that her overtime use was authorized by her prior supervisor, Mr. Hubbard, Mr. Noll was entitled to enforce different rules.  *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1228 (10th Cir. 2012) (new supervisor is entitled to enforce different standards of behavior and negative evaluation under new standards does not establish pretext).

plaintiff was telling other employees that she hoped that Mr. Noll failed at his job. *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) ("The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.").

*Similarities between Plaintiff's Termination Memorandum and Mr. Hubbard's Termination Memorandum*

Plaintiff also emphasizes that certain portions of Mr. Hubbard's termination memorandum mirror portions of her termination memorandum and that the overlap somehow suggests that the reasons for plaintiff's termination were "created last minute." No such inference can be drawn from the limited overlap between these two documents. Five of the eight reasons set forth in Mr. Noll's memorandum concerning plaintiff are not mentioned at all in Mr. Hubbard's termination memorandum. The three reasons that are mentioned in both memoranda (narrow-banding of radios; not relaying messages; and the Kansas Exchange Fund program) nonetheless set forth different details based on the role played (or mistakes made) by plaintiff and Mr. Hubbard. Plaintiff's termination memorandum, for example, identifies the narrow-banding issue only as it related to the one task that Mr. Noll asked plaintiff to complete—providing him access to the County's FCC account. Those details are not found in Mr. Hubbard's memorandum. Plaintiff's memorandum contains specific details concerning plaintiff's failure to relay messages that are not contained in Mr. Hubbard's memorandum. Thus, there is nothing about the overlap between these two documents that calls into question the veracity of the reasons stated in plaintiff's memorandum.

**B.      Noll's Statements about Technology**

In his deposition, Mr. Noll stated that one of his primary goals for the entire Road and Bridge Department was to get that department to "embrace technology," including making road records available to the public in a digital format and using mapping software. Mr. Noll testified that he instructed plaintiff to familiarize herself with the mapping software and to begin digitizing old records and that he believed that those tasks were part of her regular duties and within the scope of her position as an administrator in the road department. He further testified that plaintiff showed an "unwillingness" to participate in the conversation about the implementation of technological advances in mapping.

Plaintiff contends that Mr. Noll's testimony reflects an age bias against plaintiff and is sufficient to permit a jury to conclude that his assessment of plaintiff's performance was tainted by age stereotypes. The court disagrees. Nothing in Mr. Noll's testimony reflects a belief or an assumption that plaintiff was unable to learn new technology such that a jury might infer that Mr. Noll's termination decision was based on a generalization about the competency of older workers. Rather, his testimony indicates only a perception that plaintiff was unwilling to undertake specific tasks associated with the department's transition to technology. There is no evidence that plaintiff made any effort whatsoever to convert the department's road records to a digital format (a process that, according to Mr. Noll's undisputed testimony, involved only scanning documents) or to learn the basics of mapping software. Rather, plaintiff asserts that Mr. Noll's expectations of her were unrealistic based on the number of hours each week that she was already working.

Most significant, however, is the fact that Mr. Noll did not identify plaintiff's failure to embrace technology as a reason for her termination in his written memorandum and plaintiff

18

directs the court to no evidence that plaintiff's refusal to digitize road records or her refusal to learn mapping software had any bearing on the decision to terminate plaintiff's employment. There is no evidence that Mr. Noll ever raised this issue with the County Commissioners in any of the numerous discussions they had concerning plaintiff's employment.  Moreover, there is nothing about Mr. Noll's perception that plaintiff was unwilling to embrace technology that calls into doubt any of the myriad reasons he offered for terminating her employment—none of which concern the department's transition to technology.  *Compare Peterson v. Mid-State Group, Inc.*, 54 F. Supp. 3d 1039, 1041-42 (E.D. Wis. 2014) (factual issues existed with respect to whether termination was based on age stereotypes where reason for termination was employee's inability to learn new computer system and difficulties in adapting to new system despite evidence that plaintiff was attempting to learn the system) *with Haglund v. St. Francis Episcopal Day Sch*., 8 F. Supp. 3d 860, 875 (S.D. Tex. 2014) (principal's statement to faculty, including plaintiff, that they needed to embrace technology or retire was not evidence of age discrimination where school set forth six specific reasons for plaintiff's discharge—including her infrequent use of technology—and plaintiff failed to show that the reasons were false).  Mr. Noll's testimony about plaintiff's unwillingness to embrace technology, then, does not establish pretext.

**C.**     **Failure to Utilize Progressive Discipline**

Plaintiff asserts that the County's failure to follow its progressive discipline policy with respect to her termination demonstrates pretext.  But plaintiff has no evidence that progressive discipline was required prior to termination and, in fact, the County's policy expressly indicates that progressive discipline was "at the discretion" of the supervisor.  In such circumstances, the

County's failure to utilize progressive discipline prior to terminating plaintiff's employment is not evidence of pretext.  where "progressive discipline [is] entirely discretionary," and the employer "did not ignore any established company policy in its choice of sanction, the failure to implement progressive discipline is not evidence of pretext." *Lobato*, 733 F.3d at 1291 (quoting *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007).

### D.     Pattern of Age Discrimination

Finally, plaintiff suggests that the evidence in the record reflects the County's "pattern" of targeting older employees for termination.  In her submissions, she identifies only two employees whom she believes were targeted for termination based on age.[10]  The first is Allen Lowrance, a mechanic in the auxiliary services department who is "older" than plaintiff.[11]  Mr. Noll testified that Mr. Lowrance was terminated because he had represented to his supervisor that he had made certain repairs to an ambulance when, in fact, he had not made those repairs.  The ambulance then broke down while transporting a County citizen.  Plaintiff offers no evidence to cast doubt on the veracity of this reason other than to highlight that the incident was never documented in Mr. Lowrance's file.  Because it is undisputed that progressive discipline is entirely discretionary, the absence of documentation about the incident is not relevant to the pretext analysis and does not create an inference that Mr. Lowrance's termination was based on age.  The second is Francis

---

[10] She identified two more individuals in her deposition, but does not point to those individuals in her submissions, likely because it is undisputed that one of those individuals died while still employed by the County and the other retired voluntarily and plaintiff admitted she had no evidence that the County "forced" or even asked the individual to retire.

[11] The record does not reflect Mr. Lowrance's age.

Hubbard, who has filed his own lawsuit in this court and has recently survived summary judgment on his age claim based on facts unique to his situation.  Plaintiff's evidence concerning Mr. Hubbard falls far short of establishing a pattern of age discrimination, particularly as Mr. Noll supervised at least 15 employees who were nearing retirement age and there is no evidence that any of these individuals except Mr. Hubbard was terminated by Mr. Noll.  Moreover, plaintiff has not established any connection between the circumstances underlying her termination as the office manager (which include reasons ranging from her admitted frustration over Mr. Noll's use of the break room as his office, the use of unauthorized overtime, and Mr. Noll's belief that she was attempting to "sabotage" him) and the circumstances underlying Mr. Hubbard's termination as a road foreman. *See Heno v. Sprint/United Mgmt. Co*., 208 F.3d 847, 856 (10th Cir. 2000) "[A]necdotal evidence of discrimination should only be admitted if the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand.").

In addition to her evidence concerning Mssrs. Lowrance and Hubbard, plaintiff points to evidence that Mr. Noll asked 15 employees about their retirement plans.  It is undisputed that Mr. Noll had been advised that he would likely experience significant employee turnover in the next two years and that he should "check" with certain employees for purposes of succession planning within the department.[12]  There is no evidence that Mr. Noll asked any employee on more than one occasion; that the question was accompanied by any other comments reflecting a potential age-based animus; or that the County forced any employees who were asked about their retirement

---

[12] Plaintiff objects to Mr. Noll's testimony on hearsay grounds.  Because the County is offering the testimony to show why Mr. Noll asked employees about their retirement plans and not as evidence that employees were planning to retire, the testimony is not hearsay and the objection is overruled.

plans to retire or even asked those employees to consider retirement.  In such circumstances, Mr. Noll's inquiries cannot support an inference of age discrimination.  *See, e.g., Wagoner v. Pfizer, Inc.*, 391 Fed. Appx. 701, 708 (10th Cir. 2010) (supervisor's inquiry into plaintiff's retirement plans did not raise inference of age discrimination under particular facts) (citing *Colosi v. Electri–Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992) ("[A] company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct.")); *Wallace v. O.C. Tanner Recognition Co.*, 299 F.3d 96, 101-02 (1st Cir. 2002) ("company officials are permitted to gather information relevant to personnel planning without raising the specter of age discrimination"); *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993) (questions about retirement plans, without more, "merely demonstrate a new supervisor's reasonable inquiries about the ages of the members of his work force and their known plans for the future—facts on which to gauge the anticipated longevity of his crew").

While plaintiff concedes that Mr. Noll never asked her about her plans to retire, he did ask plaintiff if she was "tired" of her job and whether she would prefer a "different job."  Plaintiff contends that this inquiry, coupled with the fact that Mr. Noll began raising concerns about plaintiff's performance shortly after she advised him that she intended to keep working for another 10 years, is sufficient evidence of pretext to survive summary judgment.  In support of her argument, plaintiff relies heavily on the Tenth Circuit's unpublished opinion in *Maughan v. Alaska Airlines, Inc.*, 281 Fed. Appx. 803 (10th Cir. 2008).  In that case, the Circuit reversed the district court's decision granting summary judgment to an employer on the employee's age discrimination claim.  But the facts before the Circuit in *Maughan* are distinguishable from those presented here, and in meaningful ways.  The plaintiff in *Maughan* had been supervised by the

same supervisor for nearly two years without any indication that his performance was not meeting his supervisor's expectations. *Id*. at 804. After hearing from someone else that the plaintiff intended to retire within a year, the plaintiff's supervisor asked the plaintiff whether he intended to retire within a year and the plaintiff confirmed that plan. *Id*. The plaintiff testified that his relationship with his supervisor "changed drastically" at that point and, suddenly, the supervisor began noting issues with the plaintiff's performance. Id. at 804-05. The plaintiff's employment was terminated for deficient performance within one month of the plaintiff notifying his supervisor of his retirement plans. *Id*. at 805.

In finding sufficient evidence of pretext, the Circuit relied on, among other things, evidence of the supervisor's "change in attitude" after learning of the plaintiff's retirement plans, evidence that the employer added a final page to the plaintiff's final performance review after the plaintiff's termination and then forged the plaintiff's signature on it, and that the employer failed to investigate the plaintiff's claim of age discrimination despite a policy that apparently required it. *Id*. at 807-08.[13] None of those circumstances are present here. There is certainly no evidence here of any falsified or manipulated documentation or a policy requiring a specific process that never occurred. But more importantly, of course, there is no evidence that Mr. Noll asked plaintiff about her retirement plans. He asked only whether she was "tired" of her job and whether she might be interested in a different job. While plaintiff responded that she "had ten more years," Mr. Noll's inquiry lacks any relation to plaintiff's age or her retirement plans. Moreover, the fact that Mr. Noll began criticizing specific aspects of plaintiff's performance after this conversation cannot

---

[13] Even on that record, the Circuit stated that it was a "close case" and that the plaintiff's pretext evidence was not "greatly persuasive." *Id*. at 808.

reasonably be attributed to plaintiff's age (or her stated intent to continue working) when it is undisputed that Mr. Noll had just started supervising plaintiff and was new to the Director role. The Circuit has held that a new supervisor is entitled to enforce different standards of behavior and performance that a prior supervisor did not consider important and that, as a result, differences in the evaluation of an employee's performance do not establish pretext. *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1228 (10th Cir. 2012). This is unlike the situation in *Maughan*, then, when the supervisor suddenly began highlighting performance deficiencies that he had not mentioned for nearly 2 years such that the discussion about retirement could reasonably be perceived as the causal link. Here, plaintiff has not shown that link. She has not come forward with evidence that Mr. Noll's criticism about her performance was tied to her intent to keep working, her retirement plans, or her age. The evidence demonstrates only that Mr. Noll's criticism coincided with the start of his supervision over her performance and stemmed from Mr. Noll's more demanding standards.

**E.      Totality of Plaintiff's Pretext Evidence**

While the court has addressed (and rejected) separately the pieces of circumstantial evidence that plaintiff claims demonstrate a pretextual explanation for her termination, the court's inquiry is not at an end. The ultimate question on summary judgment for purposes of this case is whether plaintiff has presented sufficient evidence such that there is a genuine issue of material fact concerning whether plaintiff's age motivated the County's decision to terminate her employment. This question "cannot be answered by looking at the plaintiff's evidence in a piecemeal manner." *Voltz v. Coca–Cola Enterprises Inc*., 2004 WL 100507, at *9 (10th Cir.

2004). Rather, the court must consider whether plaintiff's evidence, taken as a whole, is sufficient to show pretext. *Sotunde v. Safeway, Inc.*, ___ Fed. Appx. ___, 2017 WL 5643116, at *4 (10th Cir. Nov. 24, 2017) ("[W]e do not look at each piece of evidence in isolation; rather, in assessing whether plaintiffs have shown pretext, we are obliged to consider their evidence in its totality.").

Ultimately, the court concludes that the facts of this case, even viewed in the aggregate and in the light most favorable to plaintiff, do not give rise to an inference of pretext. As noted earlier, when an employer advances several reasons for an adverse employment action, the Circuit has adopted a "general rule" that "an employee must proffer evidence that shows each of the employer's justifications is pretextual." *Lobato v. New Mexico Environment Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1126 (10th Cir. 2005)). While the Circuit recognizes several exceptions to that rule, plaintiff has not come forward with evidence that any of those exceptions—all of which require a showing that at least one of the proffered reasons is pretextual—applies in this case. Plaintiff has not established that any of the reasons offered by the County are pretextual, let alone that all of those reasons are pretextual. For even considering the totality of plaintiff's evidence, that evidence does not demonstrate that the County's asserted reasons for plaintiff's termination are "so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that [defendant] did not act for those reasons." *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006). Stated another way, plaintiff's evidence is insufficient for a reasonable jury to find that the County's proffered justifications were not the real reasons for plaintiff's termination. Plaintiff, then, has failed to meet her burden of demonstrating pretext and summary judgment in favor of defendant is warranted on plaintiff's age discrimination claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 13) is granted.

**IT IS SO ORDERED.**

Dated this 1st day of March, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge